UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOUDA ALI ZAHER,

       Plaintiff,

vs.

OCWEN LOAN SERVICING, LLC, AND
DEUTSCHE BANK NATIONAL TRUST
COMPANY F/K/A BANKERS TRUST
COMPANY OF CALIFORNIA, N.A., AS
TRUSTEE FOR ARGENT MORTGAGE,
ARGENT MORTGAGE COMPANY, LLC; AMC
MORTGAGE SERVICES, INC.; CITI
RESIDENTIAL LENDING INC.; AMERICAN
HOME MORTGAGE SERVICING, INC.; AH
MORTGAGE ACQUISITION CO. INC.;
HOMEWARD RESIDENTIAL, INC. jointly and
severally;

       Defendants.

Case No: 2:14-cv-11848

Honorable Linda Parker
Magistrate Judge Mona K. Majzoub

| Mohamed J. Zaher (P52020) | Erin R. Katz (P71604) |
|---|---|
| **ADVANTA LAW, PLC.** | **DYKEMA GOSSETT PLLC** |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |
| 24300 Southfield Rd., Ste. 210 | 39577 Woodward Ave., Ste. 300 |
| Southfield, MI 48075 | Bloomfield Hills, MI 48304 |
| (248) 281-6299 | (248) 203-0700 |
| zaherlaw@yahoo.com | ekatz@dykema.com |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Houda Ali-Zaher ("Plaintiff"), by and through her attorneys, ***ADVANTA LAW. PLC***, submits the following Memorandum of Points and Authorities in Opposition to a Motion to Dismiss filed by Defendants AMC Mortgage Services, Inc. ("AMC), Citi Residential Lending, Inc. ("Citi"), American Home Mortgage Servicing, Inc. ("AHMSI"), AH Mortgage Acquisition Co. Inc. ("AH Mortgage), Homeward Residential, Inc. ("Homeward"), Ocwen Loan Servicing,

LLC ("Ocwen"), and Deutsche Bank National Trust Company f/k/a Bankers Trust Company of California, as trustee for Argent Mortgage Company, LLC") ("the Trustee) (collectively "defendants) and states as follows:

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................4

INTRODUCTION ...................................................................................................5

STATEMENT OF FACTS ......................................................................................6

STANDARD OF REVIEW......................................................................................9

ARGUMENT..........................................................................................................11

I.     PLAINTIFF HAS PROPERLY ALLEGED DEFENDANTS' VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT ……….10
A.    Plaintiff Properly Alleged Defendants' Violations of the FDCPA .............................10

II.    DEFENDANTS' PREDATORY LENDING AND NEGLIGENT ACCOUNTING.........................................................11

A.    Plaintiff's Allegations for Predatory Lending and Negligent Accounting...................................................................11

B.    Plaintiff Sufficiently Alleged a Claim for Accounting. .................................12

C.    Plaintiff Properly Alleged Claims in Relation to Defendants' Violations of the MBLSLA...............................................................................13

III.    PLAINTIFF HAS SUFFICIENTLY ALLEGED FRAUD WITH THE REQUISITE PARTICULARITY..................................................................15

IV.    DEFENDANTS VIOLATED THE MICHIGAN CONSUMER PROTECTION ACT AND THE MICHIGAN COLLECTION PRACTICES ACT. ...........................................................................15

A.    The MCPA is Applicable to Defendants........................................15

V.    DEFENDANTS OWE PLAINTIFF A SUTY OF TRUST AND GOOD FAITH DEALING OUTSIDE OF THE MORTGAGE LOAN AGREEMENT

..........................................................................................18

VI.  PLAINTIFF HAS PROPERLY ALLEGED A CLAIM FOR CIVIL CONSPIRACY..................................................................................19

VII. PLAINTIFF'S ALLEGATIONS ESTABLISH A PRIMA FACIE CASE TO QUIET TITLE...........................................................................17

CONCLUSION..............................................................................................18

CERTIFICATE OF SERVICE……………………………………………….19

# TABLE OF AUTHORITIES

### A. Cases

*Abel v. Eli Lilly and Co.*, 418 Mich. 311, 338, 343 N.W.2d 164 (1984)……………………….16

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)……………………………………………………….9

*Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)…………………………………….9, 10

*Bridge v. Ocwen Fed. Bank, F.S.B.*, 681 F.3d 355, 361 (6th Cir. 2012)……………………...11

*Egerer v Woodland Realty, Inc*, 556 F3d 415, 422 (6th Cir 2009)……………………….....11

*Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)…………9

*Frey v. Gangwish II*, 970 F2d 1516, 1517 (6th Cir. 1992)…………………………………….11

*Grden v. Leikin Ingber & Winters, PC,* 643 F.3d 169, 172 (6th Cir. June 27, 2011)………...11

*Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir.2009)……………………………………….9

*Henry v. Lehman Commercial Paper, Inc.* 471 F.3d 977, 984 (9th r.2006)………………….11

*Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976)….14

*Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination*, 507 U.S. 163, 168 (1993)..9

*Teadt v. Lutheran Church Missouri Synod*, 237 Mich.App. 567, 580-81; 603 N.W.2d 816, 823 (1999)……………………………………………………………………………………...15

*United States ex. Rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 512 (6th Cir. 2007).14

*Windsor v. The Tennesseean*, 719 F.2d 155, 158 (6th Cir. 1983)…………………………….9

### B. Rules and Regulations

Fed. R. Civ. P.8……………………………………………………………………………………
Fed. R. Civ. P.9……………………………………………………………………………………
Fed R. Civ. P. 12(b)(6)……………………………………………………………………………
Fed. R. Civ. P. 12(f)……………………………………………………………………………….
MCR 2.118(A)……………………………………………………………………………………..
MCL 339.101……………………………………………………………………………………..
MCL 339.901(a)………………………………………………………………………………….
MCL 339.915(e)………………………………………………………………………………….
MCL 445.251(a)………………………………………………………………………………….
MCL 445.901……………………………………………………………………………………..
MCL 445.903……………………………………………………………………………………..
MCL 445.904(1)(a)……………………………………………………………………………...

MCL 445.1651……………………………………………………………………………….
MCL 445.1672……………………………………………………………………………….

### C. Other Authorities

Debra Pogrund Stark, *Unmasking the Predatory Loan in Sheep's Clothing: A Legislative Proposal*, 21 HARV. BLACKLETTER L.J. 129, 134 (2005).

# INTRODUCTION

This case is about financial services companies that perpetrate fraudulent and profitable schemes at the expense of distressed and hardworking homeowners, such as Plaintiff, Houda Ali-Zaher. Defendants' Motion To Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is the latest tactic in a series of repeated attempts to delay the orderly progress of this litigation. Defendants previously moved to dismiss Plaintiff's complaint by making virtually the same arguments they make here. Plaintiff filed her original action on or about March 7, 2014 in the Circuit Court for the County of Wayne, and served Defendants with discovery requests. Defendants removed Plaintiff's action to this Honorable Court as a procedural maneuver aimed at evading compliance with a State Court Discovery Order, and using this Court's heavy Docket to their advantage by making this case drag on for as long as possible.

Defendants' counsel contacted Plaintiff's attorney and requested an extension with regard to the requested discovery, to which Plaintiff's attorney agreed. A stipulated order to produce the requested documents was signed, and the Wayne County Circuit Court entered an order accordingly. (*See* Exhibit D). However, Defendants' counsel ultimately objected to the majority of the document requests (*See* Exhibit J), despite having previously stipulated to their production. (*See* Exhibit I). Defendants then removed this case to this Honorable Court, making it clear that it was never their intention to comply with the discovery orders. Instead, Defendants were simply extended to buy more time, which was confirmed when Defendants filed their first

motion to dismiss with this Court shortly after removal, which was rejected by the court due to being premature.

## STATEMENT OF FACTS

Plaintiff, Ms. Houda Ali-Zaher, is an engineer at Ford Motor Company, and also a mother of two children, one of who has physical limitations. The underlying facts that gave rise to the disputes between Plaintiff and Defendants began in 2004, when Plaintiff signed a Note with Argent Mortgage requiring her to pay $1,425.00 per month. (*See* Exhibit A "Mortgage" and Exhibit B "The Note"). Plaintiff has consistently made monthly mortgage payments in a timely fashion, often paying in excess of the required amount. During the life of this loan, the note holders used a collection agency to service the loan in accordance with the terms of the mortgage servicing company, and the source of payment for such services remains unclear.

Additionally, Plaintiff was never aware of the various assignments transferring her mortgage. Plaintiff was, and continues to be, unsure of the note-holder's identity and the manner in which her monthly payments have been applied. Defendant, American Home Loan Servicing Company, during and while the loan was being serviced by them, consistently made claims to Plaintiff that she was in default of her mortgage. Plaintiff also received threatening calls from American Home Loan Servicing Company's foreign representative threatening that her home will go into foreclosure if she does not make a payment on the mortgage.

However, in reality, Plaintiff, in addition to making the required monthly payments, even made $7000 worth of payments within one particular forty-five day span, which is almost equivalent to payments that would be made over the course of five billing cycles. Despite the overpayments, Plaintiff continued to receive harassing phone calls regarding an alleged default and a pending foreclosure. Most of the statements submitted by Defendant American Home Loan

6

Servicing Company establish that they only provided Plaintiff with a one-day or one-week window to make her monthly mortgage payment before late fees would be assessed. (*See* Exhibit K). As evidenced by this Exhibit, Defendant American Home Mortgage sent a statement to Plaintiff on January 30, 2010 requiring her to make the monthly mortgage payment of $1,425.35 by February 1, 2010 before it would be considered late!

Taking into consideration the $500 monthly escrow amount, Plaintiff's estimated monthly payment has been approximately $1,900.00. On or about February 2013, the loan was assigned to Defendant Ocwen. Upon information and belief, the assignment to Ocwen was made in response to federal authorities accusing American Home Loan Servicing Company of committing fraud against consumers. Soon after assuming the loan obligations, Defendant Ocwen began sending Plaintiff notices of Default in violation of the Federal Debt Collections Practices Act (see further below). Those notices inaccurately stated that she was required to pay an amount that was in excess of what she was actually required to pay.

In light of the fact that it has been over one year since Defendant Ocwen sent any statements to Plaintiff, it is virtually impossible to identify the recipient of her monthly payments, or the manner in which those payments have been applied. She continued to make monthly payments of almost $2,200.00 despite the fact that statements detailing the application of payments were never provided to her. Plaintiff has receipts showing all the payments were made every month via Western Union. In the last two years, Defendant Ocwen sent Plaintiff only two statements; one showing a payment received, and the second one stating that it did not show any receipt of payment despite the fact that a payment had been made. With this lack of consistency and clarity with regard to the application of payments, how was it ever determined by the Defendants that the Plaintiff was in an alleged default?

Upon learning through the news that Defendant Ocwen was being sued by federal authorities for committing fraud on consumers, Plaintiff immediately suspected that she was among the consumers that had been victimized by the mortgage fraud scam. Publicly available documents recently revealed that Defendant Ocwen, by virtue of its agreement with the federal government, has publically admitted to engaging in widespread mortgage fraud, and was ordered to pay $2.2 billion in fines and damages as restitution for such misconduct. However, neither the public admission, nor the payment of fines, served to deter Defendant Ocwen (among other Defendants) from continuing to defraud consumers, including the Plaintiff in the instant case now before this Honorable Court.

Defendants' Exhibit C purporting to show an assignment of the loan serves as example the continued fraud. Upon examination of Defendants' Exhibit C, it is immediately revealed that such assignment was driven by fraud because the assignment was signed by Crystal Moore, the same woman who has testified to signing tens, if not hundreds, of mortgage assignments without being aware as to exactly what she was doing. Unfortunately, Plaintiff was a victim of this particular wave of assignment scam. The identity of Plaintiff's true lender and the manner in which Plaintiff's payments have been applied throughout the years remain a mystery to Plaintiff.

Defendants offer nothing to support their unfounded claim with regard to Plaintiff's alleged default. In fact, the IRS 1098 documents that were filed by Defendants from 2004-2013 do not contain any information indicative of Plaintiff's alleged Default. (*See* Exhibit G). Even the ledger Defendants provided in response to a discovery request reflects that Plaintiff did indeed make timely monthly mortgage payments. (*See* Exhibit H). As set forth in the Complaint, Defendants are not a mortgage company; but rather, a business that consists of debt-collection

8

and loan servicing. Defendant Ocwen even admitted to being a loan servicer, as oppose to a lender, which includes them within the definition of "Debt Collectors."

In summary, Defendants defrauded Plaintiff by: failing to provide Plaintiff with adequate disclosure regarding the additional charges associated with a separate financial service, failing to docket payments received from Plaintiff in a timely manner, failing to accredit plaintiff for the amount received, charging late fees and applying payments received to the late fees before applying them to the interest and principle, failing to send monthly statements informing and advising Plaintiff as to where and how her payments were applied, and other deceitful practices that caused Plaintiff substantial economic damages.

## STANDARD OF REVIEW

In determining whether a Plaintiff has adequately alleged a claim to relief, a court must accept Plaintiff's factual allegations as true. Relevant to the inquiry is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir.2009). Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Gunasekera,* 551 F.3d at 466 (quoting Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Additionally, a complaint must be construed liberally in the favor of Plaintiff. *Windsor v. The Tennesseean*, 719 F.2d 155, 158 (6th Cir. 1983). "While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Id*.

Rule 12(b)(6) motions are disfavored in the law, and a court will rarely encounter circumstances that justify granting them. It is well established law that a court may dismiss a

claim only when it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations found in the complaint. The claimant is not required to set out in detail the facts upon which the claim is based. Rather, the Rules require that the claim simply give the defendant "fair notice." *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination*, 507 U.S. 163, 168 (1993). The court must accept as true the allegations in the complaint, and must view the allegations in the light most favorable to the plaintiff. The Rules also dictate that the pleadings be liberally construed "as to do substantial justice." As set forth in the argument below, Defendants Motion to Dismiss fails as a matter of law.

# ARGUMENT

## I.  PLAINTIFF HAS PROPERLY ALLEGED DEFENDANTS' VIOLATIONS THE FAIR DEBT COLLECTION PRACTICES ACT, THE FAIR CREDIT REPORTING ACT, THE MICHIGAN CO

### A.  Plaintiff's Properly Alleged Defendants' Violation of the FDCPA

Plaintiffs' pleadings "contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" and raises a right to relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defendants' claim regarding Plaintiff's alleged failure to properly plead facts or dates in support of a claim under FDCPA is completely baseless. The FDCPA was enacted in 1977 in response to negative public perception regarding unfair and abusive debt collection practices by many debt collectors. *Frey v. Gangwish II*, 970 F2d 1516, 1517 (6th Cir. 1992).

Defendants have violated 15 USC § 1692 (e) (2), (8) and (10). Defendants made false representations as to an outstanding mortgage debt, wherein Defendants alleges past due amounts. Plaintiffs' complaint clearly states that Defendants failed to properly apply Plaintiff's

payments towards the interest and principle of Plaintiff's mortgage. In addition to claiming that Plaintiff defaulted on her mortgage payments, Defendants attempted to collect more than what Plaintiff actually owed. The FDCPA "generally prohibits a debt collector from using 'any false, deceptive, or misleading representations in connection with the collection of any debt.' 15 U.S.C. §1692e." *Grden v. Leikin Ingber & Winters, PC,* 643 F.3d 169, 172 (6th Cir. June 27, 2011).

Defendants also subjected Plaintiff to intimidation, fear, and harassment. Defendants further argue that the Plaintiff 's action was brought after the one-year statute of limitations for FDCPA actions had passed. Plaintiff's lawsuit was filed within permissible time limits because Defendants fraudulently concealed their wrongful conduct from Plaintiff. *See, e.g., Egerer v Woodland Realty, Inc*, 556 F3d 415, 422 (6th Cir 2009).

## II. DEFENDANTS' PREDATORY LENDING AND NEGLIIGENT ACCOUNTING

### A. Plaintiff's Allegations for Predatory Lending and Negligent Accounting

Predatory lending consists of "the practice of making loans containing interest rates, fees or closing costs that are higher than they should be in light of the borrower's credit and net income, or containing other exploitative terms that the borrower does not comprehend*." Henry v. Lehman Commercial Paper, Inc.* 471 F.3d 977, 984 (9th Cir.2006); *see also Debra* Pogrund Stark, *Unmasking the Predatory Loan in Sheep's Clothing: A Legislative Proposal*, 21 HARV. BLACKLETTER L.J. 129, 134 (2005) (stating that "predatory lending is the situation where a mortgage broker or mortgage lender engages in fraudulent activity… would include loans that are overpriced, loans where there is no net economic benefit to the borrower, loans where the borrower cannot afford the payment… and loans with other exploitative terms not understood by the borrower) (emphasis added).

11

Clearly, the activities engaged by Defendants constituted a practice of predatory lending. Although there is no case in Michigan that has analyzed one way or another whether "Predatory Lending" is a viable cause of action, based on the foregoing, it should be. Because Defendant Ocwen and the other co-Defendant servicing companies committed fraudulent billing practices against the Plaintiff, Plaintiff has suffered damages. In addition, because the Defendants have hid or misrepresented the true costs and risks of the loan's terms, they have engaged in predatory lending. Plaintiff has properly alleged this point in her Complaint. Therefore, Defendants motion is without merit and should be denied

### B.      Plaintiff Sufficiently Alleged a Claim For Accounting

In arguing that Plaintiff cannot maintain a claim for accounting, Defendants reference case-law that states an accounting remedy cannot be granted in the absence of an indeterminable sum. However, Defendants' reliance on this argument is misplaced because they fail to recognize that the precise sum of the mortgage is unknown to Plaintiff. Defendant Ocwen has sent notices of default without properly crediting Plaintiff's monthly payments. Plaintiff was continuously making monthly payments, but was at all times unaware of the manner in which the payments were being applied to the mortgage.

Defendant Ocwen did not take any actions to clarify any discrepancies or uncertainties with regard to how and when Plaintiff's monthly payments were being applied. The sums due under the mortgage cannot be determined due to the discrepancies and uncertainties that have resulted from Defendant Ocwen's lack of clarity and failure to provide Plaintiff with statements reflecting how and when Plaintiff's payments were being applied to the actual and contractual sums due under the mortgage. Lastly, Defendants' argument, that Plaintiff cannot maintain a

claim for accounting, is made in complete and utter disregard to the facts and allegations surrounding this case.

In addition, Defendant Ocwen fraudulently assessed late fees on the account, when in fact the Note clearly states that any payment received shall apply to the interest, then the principal. This is contrary to the activities of Ocwen, which as alleged in Plaintiff's Complaint, payments were being wrongfully applied to the late fees first, then the interest, and then the principal. Defendants arguments are without merit, and the caselaw cited is not applicable to this unique situation.

An accounting remedy is needed here to determine where the timely payments made by the Plaintiff are going, and how the satisfaction of the mortgage debt is being handled upon receipt of payment. As a Michigan consumer, and the obligee under the Note, Plaintiff is entitled to know how her payments are being applied towards the Note. Unfortunately, for the past three years, despite the Plaintiff having made almost $75,000.00 in payments when the Note she was obligated to pay only required $52,200.00. Such a discrepancy requires an accounting, a feat a court can do. Thus, the motion to dismiss should be denied.

### C. **Plaintiff Properly Alleged Claims in Relation To Defendants' Violation of the MBLSLA**

The MBLSLA outlines conduct that is prohibited or considered violative of the Act, and is aimed at preventing fraud, deceit, or material misrepresentations in mortgage loan transactions, among other things. M.C.L §§ 445.1672; 445.1677; 445.1679. Here, Plaintiff has indeed alleged how the Defendants have violated the Act and how the alleged violations caused Plaintiff damages. As such, Plaintiff's pleading does indeed meet the pleading standards required by *Iqbal*, as discussed above.

## III. PLAINTIFF HAS SUFFICIENTLY ALLEGED FRAUD WITH THE REQUISITE PARTICULARITY

A plaintiff alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiff's fraud claims were well pled and possessed the requisite particularity under Rule 9(b). Plaintiff specifically stated the "who, what, when, where, and how" surrounding the fraud that occurred. Plaintiff has provided substantiation of her allegations of fraud; namely, that Defendant Ocwen repeatedly communicated to Plaintiff that her loan was in default, despite Plaintiff's consistent payments, which were often sent via Western Union for the purpose of being transmitted to Defendant quicker.

However, even assuming *arguendo* that Plaintiff did not comply with Rule 9(b) (which Plaintiff did), pleading requirements must be relaxed where the facts relating to the fraud "are peculiarly within the perpetrator's knowledge." *United States ex. Rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 512 (6th Cir. 2007). In such instances, the Plaintiff only has to "set forth the factual basis for his belief" that fraud has been committed. *Id*. The touchstone of such factual basis is whether Plaintiff's allegations state a plausible claim for relief. Here Plaintiff has set forth the factual basis for plausible claims for fraud against all Defendants.

To state a claim for fraud under Michigan law, a plaintiff must establish the following: (1) defendant made a material misrepresentation that was false; (2) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he suffered injury. *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976). Here, Plaintiff has alleged plenty of facts supporting a cause of action for fraud under Michigan law, and for

14

purposes of this early motion to dismiss, all her allegations of material misrepresentations and deceit on part of the Defendants must be accepted as true.

## IV. PLAINTIFF SUFFICIENTLY ALLEGED DEFENDANTS' VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT AND THE MICHIGAN COLLECTION PRACTICES ACT

### A. The MCPA is Applicable to Defendants

Defendants argue that the Michigan Consumer Protection Act ("MCPA"), MCL 445.901, immunizes them for liability for being a mortgage business. However, Defendants seem to be confused with regard to their actual classification. For example, all correspondence that Defendant mails to Plaintiff specifically states that Defendant is a debt collection agency attempting to collect a debt, and is not a mortgage company. Thus, the statutory exception is not applicable here. (*See* Exhibit H). Indeed, a debt collection agency is not exempted under the statute. This is contrary to the claim of the Defendants that they did not act as a collection agency. The MCPA prohibits "unfair, unconscionable or deceptive methods, acts, or practices in the conduct of trade or commerce." MCL 445.903 (emphasis added). The conduct of the individual Defendants amounts to deceptive methods, as detailed previously above.

The Michigan Debt Collections Act applies to debts "arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes." *See* MCL 339.901(a) and MCL 445.251(a). Because the alleged collection activities of the individual Defendants occurred as a result of a debt incurred for Plaintiffs' house, Plaintiff can indeed maintain a claim under the Michigan Debt Collection Practice Act.

## V. DEFENDANTS OWE PLAINTIFF A FIDUCIARY DUTY OF TRUST AND GOOD FAITH DEALING OUTSIDE OF THE MORTGAGE LOAN AGREEMENT

As evidenced by Plaintiff's Complaint, Defendants have individually or collectively improperly serviced the mortgage loan pursuant to the parties' loan contract. Under Michigan law, "a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another." *Teadt v. Lutheran Church Missouri Synod*, 237 Mich.App. 567, 580-81; 603 N.W.2d 816, 823 (1999). In this case, the Plaintiff trusted the Defendants in the course of the mortgage relationship with the lender, but the same level of trust was not reciprocated. Defendants have engaged in fraudulent activities by misrepresenting the balance of the Note, and by charging the Plaintiff fees in excess of amounts mandated by the Note. In addition, Defendants have breached their fiduciary duties by failing to be honest in their dealing with the Plaintiff. Plaintiff has suffered damages as a result of Defendants breach, including economic and psychological damages.

## VI. PLAINTIFF HAS PROPERLY ALLEGED A CLAIM FOR CIVIL CONSPIRACY

To state a claim for civil conspiracy under Michigan law, "a plaintiff need *only* allege that the defendants were jointly engaged in tortious activity as a result of which the plaintiff was harmed." *Abel v. Eli Lilly and Co.*, 418 Mich. 311, 338, 343 N.W.2d 164 (1984). Defendants argue on that Plaintiff did not cite an underlying tort upon which the conspiracy was based. However, it is clear from the Complaint that the conspiracy claim relates *directly* to all of the other counts of the Complaint—*i.e.* the allegations that Defendants have intentionally lied to Plaintiff and tricked her into Default, including but not limited to by such specifically tortuous means as intentional fraud, constructive fraud, misrepresentations, deceit, etc. As such, Plaintiff

has raised a claim for conspiracy to commit an underlying tort, and Defendants' Motion must be denied.

Pursuant to the assignment dated February 16, 2009 (*see* Exhibit C), it shows that City Residential Lending Inc. assigned the Note to DEUTSCHE Bank National Trust Company, and, pursuant to said assignment, was signed by Crystal Moore and later determined, upon information and belief, that said assignment was fraudulent. The assignee used the services of the debt collection agencies, including Defendant Ocwen, to collect a debt. During the assignment, it was well known that Defendant Ocwen and AHLS were accused of committing fraud against consumer homeowners. Such tortuous conduct does give rise to a civil conspiracy claim. The assignor and the servicing companies did not take any remedial measures to protect the Plaintiff, especially when the Plaintiff, on numerous occasions distributed the validity of the amounts that were assessed against her. Plaintiff's Complaint stated sufficient facts and gave the Defendants fair notice of her claim. For this reason, the Motion to Strike/Dismiss the Civil Conspiracy count should be denied.

## VI. PLAINTIFF'S ALLEGATIONS GIVE RISE TO A PRIMA FACIE CASE TO QUEIT TITLE

Plaintiff does not have to prove that she paid off the debt completely because there is existing and bad lending practices of the mortgage/debt collection companies in this case. Given the lack of identity of the lenders resulting from the repeated assignments, a quite title is a permissible claim of relief. Thus, the doctrine of unclean hands, as alleged by the Defendants, is inapplicable in this case. Because the identity of the lender is unclear in this specific instance, and a lack of knowledge as to where the payment made by the Plaintiff is going, the claim for quite title is a reasonable remedy considering the totality of circumstances.

# CONCLUSION

**WHEREFORE**, Plaintiff, by and through her attorneys, ***ADVANTA LAW. PLC,*** requests that this Honorable Court enter an order denying Defendants' Motion to Dismiss Plaintiff's Complaint considering that: (a) Plaintiff's complaint contains properly plead claims upon which relief may be granted, since each of Plaintiff's allegations must be accepted as true, (b) Defendants' intentions in this lawsuit are to harass and intimidate Plaintiff, and to excessively delay this case. (c) Defendants' Motion to Dismiss is premature, just as it was the last time Defendants filed a Motion to Dismiss, (c) a Motion to Dismiss is Premature for this stage in litigation, (d) this Honorable Court previously denied Defendants' Motion to Dismiss as being too premature for this stage in litigation, and (e) Defendants' motion is confusing, and is not in correspondence with laws. Defendants' counsel has been attempting to drag this case on for as long as possible, and this continues to harm Plaintiff, while allowing Defendants' in this case the luxury of evading continuation of this case.

Respectfully Submitted,

  /s/Mohmed J. Zaher
Mohamed J. Zaher (P52020)
**ADVANTA LAW, PLC**
*Attorney for Plaintiff*
24300 Southfield Rd., Suite 210
Southfield, MI 48075
(248) 281-6299
zaherlaw@yahoo.com

Dated: April 10, 2015

# CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2015, a copy of the Plaintiff's Response to Defendants Motion to Dismiss/Strike, and attached exhibits, were served through transmission via the Court's CM/ECF system.

Respectfully Submitted,

/s/Mohamed J. Zaher
Mohamed J. Zaher (P52020)
**ADVANTA LAW, PLC**
*Attorney for Plaintiff*
24300 Southfield Rd., Suite 210
Southfield, MI 48075
(248) 281-6299
zaherlaw@yahoo.com

Dated April 10, 2015

# LIST OF EXHIBITS

1. EXHIBIT A Plaintiff's Mortgage Agreement
2. EXHIBIT B The Note Associated with Plaintiff's Mortgage
3. EXHIBIT C Assignment of Note from City Residential Lending Inc. to DEUTSCHE Bank National Trust
4. EXHIBIT D Wayne County Circuit Court Discovery Order
5. EXHIBIT G Defendants' IRS documents
6. EXHIBIT H Defendants' Ledger
7. EXHIBIT I  Stipulated Order of Discovery Submitted to Wayne County Circuit Court
8. EXHIBIT J  Plaintiff's Wayne County Circuit Court Document Discovery Requests
9. EXHIBIT K Statement from American Home Mortgage January 30, 2010